**FILED**
**Jan 14, 2022**
**07:15 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT COOKEVILLE

| | | |
|---|---|---|
| **AMANDA MOSLEY,** | ) | **Docket No 2019-04-0064** |
| **Employee,** | ) | |
| **v.** | ) | |
| **HG STAFFING, LLC,** | ) | **State File No. 7907-2019** |
| **Employer,** | ) | |
| **And** | ) | |
| **CAROLINA CAS. INS. CO.,** | ) | **Judge Robert Durham** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING TEMPORARY PARTIAL DISABILITY BENEFITS

---

Ms. Mosley asked the Court to order HG Staffing to provide additional temporary partial disability benefits for her right wrist and hand injuries. HG Staffing asserted that Ms. Mosley was not entitled to those benefits, since she was terminated for cause and did not prove the extent of her temporary disability through expert medical opinion. After considering the record, the Court holds that Ms. Mosley is entitled to additional temporary partial disability benefits.

### History of Claim[1]

This is the third expedited hearing in this case. To recap the previous hearings, in the first Expedited Hearing Order, the Court held that Ms. Mosley was likely to prove she sustained a work-related injury on January 10, 2019, to her right hand and wrist.[2] The Court ordered HG Staffing to pay temporary partial disability benefits from April 8

---

[1] The parties agreed to the admission of the exhibits and testimony introduced at the previous Expedited Hearings. The parties also stipulated that HG Staffing paid temporary partial disability benefits from April 8 through June 20, 2019, and for one week after her surgery in 2021 at the agreed compensation rate of $293.62. Finally, the parties stipulated that Ms. Mosley worked for two weeks at a nursing home after her injury before quitting because of pain and would not be entitled to temporary disability benefits for that time.

[2] HG Staffing did not offer any additional medical evidence to challenge causation at this hearing.

through June 20, 2019, but it denied Ms. Mosley's request for additional temporary disability benefits and medical treatment with her unauthorized doctor, Roy Terry. In the second Expedited Hearing Order, the Court ordered the surgery recommended by Dr. Terry but found that Ms. Mosley did not present sufficient medical proof of the duration and extent of any temporary disability.

In this hearing, Ms. Mosley is seeking temporary disability benefits from January 28, 2019, through October 28, 2021, less any payments already made by HG Staffing.[3] Thus, the Court will summarize the evidence previously presented as to temporary disability as well as the new evidence.

The evidence from the first hearing showed that HG Staffing, an employment agency, hired Ms. Mosley in September 2018 to work at Dana Corporation. Ms. Mosley believed she was "doing great" and would soon be offered a full-time position. However, she sustained a work-related injury to her hand and wrist in January 2019, and she told her supervisor at Dana of her injury. She testified that the supervisor modified her duties but advised her against giving formal notice of an injury because she could lose her job.

Ms. Mosley's symptoms persisted, and a safety coordinator at Dana insisted she file an accident report, which she did on January 25. Dana sent an email to HG Staffing later that day stating, without clarification, that it would be in "everyone's best interests" to terminate Ms. Mosley's assignment. HG Staffing then terminated Ms. Mosley's employment on January 28 and told her it was due to her performance.

At this hearing, the only evidence HG Staffing introduced as to Ms. Mosley's performance at Dana included undated, unsigned forms provided by Dana and designated as thirty- and sixty-day performance reviews. The first review stated that Ms. Mosley performed satisfactorily in all categories. The second review found that Ms. Mosley was satisfactory in most categories, but she needed to show more initiative and be more willing to assist co-workers. Dana did not offer a written ninety-day review form.

Denise Givens, Chief Operating Officer of HG Staffing, admitted at this hearing that she did not have these evaluations at the time she terminated Ms. Mosley. Instead, she obtained them after the first order finding that HG Staffing terminated Ms. Mosley without cause. Ms. Givens further admitted that she still did not know about Ms. Mosley's alleged performance deficiencies other than what was in the sixty-day evaluation, and she agreed that Dana had not complained of Ms. Mosley's attitude or initiative before the termination. However, she testified that Dana would not do so, since it did its own evaluations.

---

[3] Dr. Terry found Ms. Mosley to be at maximum medical improvement on October 28, soon after the Expedited Hearing was scheduled.

HG Staffing also introduced an affidavit from Timothy Pile, Training Coordinator with Dana. The affidavit only stated that on January 25, Dana determined that it would be in its "best interests to terminate Ms. Mosley from her assignment." The affidavit gave no details on Ms. Mosley's alleged deficiencies or why termination was in Dana's "best interests."

Ms. Mosley testified at this hearing that Dana never gave her the thirty- or sixty-day evaluation forms, and she had no idea of any problems regarding job performance until she received the email terminating her employment.

The parties introduced evidence regarding Ms. Mosley's continued employment with HG Staffing after the Dana assignment was terminated at the first hearing. Ms. Givens testified that if an employee's contract is terminated, she is taken off HG Staffing's records unless she reapplies for a new appointment. Thus, Ms. Mosley's last day of employment was January 28. Ms. Mosley responded that after her termination, she called HG Staffing about a new assignment but was told nothing was available. Ms. Givens said she had no knowledge of Ms. Mosley requesting another assignment and stated that HG Staffing had jobs to accommodate any restrictions if Ms. Mosley had remained employed.

At this hearing, Ms. Mosley admitted that, beginning two days after her termination, she spent sixty-four days in jail for a probation violation.[4]

After leaving jail, an authorized physician restricted Ms. Mosley from working with her right hand for six weeks. He then released her to full duty with no impairment or restrictions. Ms. Mosley testified that she then took employment at a nursing home, despite still suffering from hand pain. She worked there for a few weeks, but the job required significant right-hand use, and the pain forced her to quit.

After the nursing home, Ms. Mosley returned to Dr. James Rubright, an authorized physician, who would not attribute her continued complaints to her January accident. HG Staffing then denied Ms. Mosley's claim, and she sought treatment with orthopedist Dr. Terry. The Court ordered HG Staffing to authorize Dr. Terry to treat Ms. Mosley, including surgery, as well as to pay temporary total disability benefits for the time Dr. Rubright took her off work.

The Court reconsidered the issue of temporary disability benefits at the second Expedited Hearing. Ms. Mosley introduced a C-32 from Dr. Terry that stated that, while he never took Ms. Mosley off work, he felt that her condition required temporary restrictions, and that she should only work "as tolerated." Ms. Mosley testified at the

---

[4]She could not remember the date she began her term but recalled it ended on April 4. Sixty-four days earlier would be January 30,

hearing that she was extremely limited in using her right hand given the pain and weakness she suffered in it. For example, she said that she dropped a bottle of cleaning fluid while attempting to clean her floor and was sprayed in her eye. She did not believe that she could find employment with her symptoms.

The Court held that Dr. Terry's statement regarding temporary disability, even when combined with Ms. Mosley's lay testimony, was insufficient to justify a finding as to the extent and duration of any temporary partial disability and denied benefits.

At this hearing, the evidence showed that Dr. Terry performed surgery on Ms. Mosley's wrist, and HG Staffing provided temporary total disability benefits for one week after the surgery but denied any additional benefits. On October 28, 2021, Dr. Terry found Ms. Mosley to be at maximum medical improvement with a one-percent impairment. He also placed her under permanent restrictions of no repetitive use of her right hand with a twenty-pound weight restriction. Dr. Terry additionally wrote a note dated November 18, 2021, that stated Ms. Mosley was "temporarily disabled from January 10, 2019 until October 28, 2021 when she was placed at maximum medical improvement."

Finally, Ms. Mosley testified at this hearing that she has not worked since the nursing home. She contemplated applying at a department store but decided not to do so after consulting Dr. Terry.

### Findings of Fact and Conclusions of Law

The sole issue is whether Ms. Mosley is likely to prevail at trial on the issue of temporary partial disability benefits from January 28, 2019, her last day of employment with HG Staffing, through October 28, 2021, when Dr. Terry found her to be at maximum medical improvement. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2021).

To receive temporary disability benefits, Ms. Mosley must prove: (1) a disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *See Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at \*13 (Mar. 30, 2016). Where the disability is not total, the employee may recover temporary partial disability benefits if the employee is able to resume some gainful employment but has not reached maximum recovery. *Id.*

HG Staffing disputed Ms. Mosley's entitlement to temporary partial disability benefits on two grounds: (1) it terminated her for cause, and it would have had work for her within her disability had she not been fired, and (2) Ms. Mosley has not provided sufficient evidence as to the duration and extent of her temporary disability. The Court will address both contentions.

4

The termination-for-cause-defense applies in situations where temporary partial disability benefits are sought and, but for the termination, the employee could have returned to work despite her restrictions. *See Woodard v. Freeman Expositions, LLC*, 2021 TN Wrk Comp. App. Bd. LEXIS 21, at *9-10 (July 16, 2021). *Woodard* held that an employer is entitled to enforce workplace rules, and an employee's termination may relieve the employer's obligation from paying temporary partial disability benefits if: (1) the actions allegedly precipitating the dismissal was a violation of workplace rules; and, (2) those actions were the true motivation for the dismissal. *Id*.

The Court previously held that Ms. Mosley was likely to prove that HG Staffing did not terminate her for cause, and HG Staffing offered little evidence to change that opinion. The alleged sixty-day evaluation was unsigned and undated. While it asserted that Ms. Mosley was lacking in "initiative" and "teamwork," it did not elaborate on these alleged deficiencies. HG Staffing did not offer a ninety-day evaluation form, nor any evidence from Dana, including Mr. Pile's affidavit, that explained why Ms. Mosley's performance was inadequate.

Significantly, Ms. Givens admitted that she did not have these evaluations in hand when she terminated Ms. Mosley on January 28, 2019, and in fact, she did not obtain them until after the first Expedited Hearing Order. She further admitted she did not know any details about Ms. Mosley's job performance at Dana, and she terminated Ms. Mosley based only on Dana's email that it would be in "everyone's best interests" to do so.

For her part, Ms. Mosley maintained she believed she was doing well in her job at Dana. She denied ever seeing the alleged sixty-day evaluation or being advised that she needed to improve in initiative or teamwork. She also maintained that her supervisor warned her that if she gave notice of her injury, she would be let go. HG Staffing offered no evidence to the contrary. Tellingly, when Ms. Mosley was compelled to provide formal notice on January 25, Dana terminated her contract that day.

The Court continues to find Ms. Mosley to be a credible witness about her injury and termination from Dana and HG Staffing. Given the evidence above, the Court holds that Ms. Mosley is likely to prove that she was not terminated for cause, and her termination does not prevent her from receiving temporary partial disability benefits.

The Court now considers whether Ms. Mosley is likely to prove the extent and duration of her disability. Regarding extent, while Dr. Terry stated Ms. Mosley was partially disabled from the date of injury until she reached maximum medical improvement, he never placed any specific, temporary restrictions on her activities. However, after she recovered from her surgery, he did assign *permanent* restrictions of no repetitive use of her right hand and no lifting more than twenty pounds.

Likewise, Ms. Mosley testified without contravention that, before her surgery, she

suffered from significant pain and weakness in her right hand and did not believe she could find a job she could perform. She tried to work at a nursing home for a few weeks but was unable to continue in that job. Ms. Mosley also contemplated applying for a job at a department store but decided not to do so after consulting with Dr. Terry.

Ms. Givens testified that HG Staffing would have had a job Ms. Mosley could have performed had she not been terminated, but she did not give any specific examples. Further, HG Staffing never offered her one, even though Ms. Mosley testified that she asked for another job. Finally, given that the Court has determined that HG Staffing did not terminate Ms. Mosley for cause, the Court finds that its position that it could have accommodated Ms. Mosley's restrictions to be of little value.

Thus, the Court holds that Ms. Mosley is likely to prove that HG Staffing did not attempt to accommodate her restrictions after her injury, and these restrictions effectively precluded her from finding gainful employment elsewhere. Thus, the Court holds that she is entitled to benefits in the full amount of her compensation rate of $293.62 while temporarily disabled.

As for duration, Dr. Terry gave an unequivocal opinion that Ms. Mosley was temporarily disabled from January 10, 2019, through October 28, 2021, when he released her at maximum medical improvement. Ms. Mosley corroborated this opinion through her testimony that she did not work after her termination, other than a few weeks where she attempted to work at a nursing home but found she was unable to do so. HG Staffing did not offer any evidence to counter either Dr. Terry's opinion or Ms. Mosley's testimony. The Court holds that Ms. Mosley is likely to prove she was partially disabled from January 10, 2019, through October 28, 2021.

However, this does not mean that HG Staffing must pay disability benefits for the entire period. Ms. Mosley admitted that she was in jail from January 30 through April 4, 2019. Thus, her inability to work was not due to her injury but to her incarceration, and the Court holds that she is not entitled to temporary disability benefits for that time. Likewise, she would not be entitled to temporary disability benefits for the two weeks she worked at a nursing home. Finally, HG Staffing is entitled to a credit for the benefits it paid from April 8 through June 20, 2019, as well as for one week following Ms. Mosley's surgery.

Thus, the Court holds that HG Staffing must pay Ms. Mosley $34,772.24, which represents 122 weeks and five days of temporary partial disability benefits.

IT IS, THEREFORE, ORDERED THAT:

1. HG Staffing shall pay Ms. Mosley $34,772.24 in temporary partial disability benefits.

2. This case is set for a Scheduling Hearing on **February 25, 2022, at 9:00 a.m. Central Time**. The parties must call 615-253-0010 to participate. Failure to appear might result in a determination of the issues without the party's participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED on January 14, 2022.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1. Request for Expedited Hearing
2. HG Staffing's Pre-Trial Brief
3. HG Staffing's Witness List
4. HG Staffing's Exhibit List

Exhibits:
1. First Report of Injury
2. 1st Expedited Hearing Order
3. 2nd Expedited Hearing Order
4. Appeals Board Order
5. Affidavit of Tim Pile
6. Dr. Terry's 11-18-21 Medical Note
7. C-32 from Dr. Roy Terry
8. Affidavit of Denise Givens
9. Transcript of 1-15-21 Expedited Hearing
10. Collective exhibits and testimony from previous Expedited Hearings
11. Attendance Sheet from Dana
12. Dr. Terry's handwritten note
13. Dr. Terry's medical record

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on January 14, 2022.

| Name | Certified Mail | Email | Service sent to: |
|------|------|------|------|
| Amanda Mosley, Employee | X | X | 217 Hillcrest Drive Carthage, TN 37030 Ajmosl78@gmail.com |
| Rosalia Fiorello, Employer Attorney | | X | rfiorello@wimberlylawson.com |

_____

**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov

8



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____ ☐ Motion Order filed on _____

☐ Compensation Order filed on_____ ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*